**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

**Kelly D. Jones, OSB No. 074217**
kellydonovanjones@gmail.com
Direct 503-847-4329

**Matthew Sutton, OSB No. 924797**
msutton@integra.net
Direct 541-772-8050

Of Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CARLTON CHASE**, **ERIC MACCARTNEY** and **LUANNE MUELLER**, individually and on behalf of all others, | Case No. 3:18-cv-568 |
| | **CLASS ACTION ALLEGATION COMPLAINT** |
| Plaintiffs, | |
| v. | Unlawful Collection Practices Unlawful Trade Practices |
| **GORDON, AYLWORTH & TAMI, P.C.** and **VISION INVESTIGATIVE SERVICE, LLC**, | Demand for Jury Trial |
| Defendants. | |

**COMPLAINT** – Page 1 of 22

1.

## INTRODUCTION

Laws protecting people from unfair debt collection date back to America's Founding Fathers. The Constitution instructed Congress to enact uniform laws on debt forgiveness. Almost 75 years after the Constitution was ratified, Congress passed the 13th Amendment, prohibiting all forms of indentured servitude. Another 100 years later, the United States Supreme Court began declaring debtors' prisons unconstitutional. In 1977, Congress passed the Fair Debt Collection Practices Act to protect people from unfair collection practices. Oregon law specifically prohibits collectors from charging excessive service fees.

But not all collectors choose to follow the law.

2.

On May 4, 2017, the Eugene, Oregon debt collection law firm of Gordon, Aylworth & Tami, P.C. (GAT) filed a lawsuit against Mr. Carlton Chase. GAT filed its lawsuit to collect a credit account debt Mr. Chase had become unable to pay. In addition to the credit account debt amount of $752.64, GAT added a $45 fee by falsely claiming "expedited service". Routine service would not have exceeded a cost of $36. GAT subsequently collected the debt and "expedited service" fee from Mr. Chase in full.

3.

Unknown to Mr. Chase at the time, Oregon law prohibited GAT from collecting a routine service fee in excess of $36. Higher costs were only permissible if they were both reasonable and necessary. GAT's $45 fee was not reasonable when the actual cost of service by mail was approximately $7. Upon investigation, Mr. Chase discovered that he wasn't alone. To increase profits, GAT regularly charges unreasonable and unnecessary and excessive service fees, in violation of Oregon and federal law. Similar to Mr. Chase, Mr. Eric MacCartney and Ms. Luanne Mueller were also charged excessive service fees by GAT in 2017.

4.

Plaintiffs discovered that GAT funneled the excessive service fees through a dummy service company that was controlled and operated by attorneys for GAT. By charging excessive service fees and funneling the profits through a dummy service company, GAT puts local debt collectors that do not overcharge consumers at a competitive disadvantage. Although the excessive service fees of at least $9 may not have caused substantial damage to each plaintiff individually, the aggregate damages suffered by similarly situated consumers are indeed substantial.

5.

To paraphrase Judge Posner, "only a lunatic or a fanatic" goes to court over a $9 excessive service fee. So, plaintiffs file this lawsuit as a class action, on behalf of themselves, and thousands of other consumers ripped off by GAT's unlawful collection practices.

6.

Plaintiffs file this case in hopes of stopping GAT from continuing to demand and collect excessive service fees in its lawsuits. They also hope to force defendants to return the thousands of dollars in excessive service fees that they have unlawfully collected from unwitting Oregon consumers.

7.

## JURISDICTION AND THE PARTIES

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367 because the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, is a federal consumer protection law, and because plaintiffs' claim under Oregon's Unlawful Trade Practices Act (UTPA) is so related to the FDCPA claim that they form part of the same case and controversy.

8.

Plaintiffs are individuals living in Multnomah County, Oregon and "consumers" protected by the FDCPA because they allegedly owed delinquent credit account debt incurred for personal, family, household purposes. Plaintiffs are also "persons" protected by the UTPA.

9.

GAT is a "person" governed by the UTPA because GAT and its attorneys regularly collect debts in the course of their business and occupation. GAT advertises itself as a "high-volume" law firm practicing debt collection throughout the Pacific Northwest since 1978. GAT and its predecessor corporations have a pattern and practice of violating the laws governing debt collection in Oregon. See, e.g., *Gordon v. Rosenblum*, 361 Or. 352 (2017), etc.

10.

GAT is a "debt collector" as that term is defined in the FDCPA because it regularly collects defaulted debts owed to, and on behalf of, others, including Midland Funding, LLC in this case, using the United States Postal Service, and the principal purpose of GAT's business is the collection of delinquent debts owed to others.

11.

GAT is an Oregon corporation. GAT's registered agent with the State of Oregon is Matthew Aylworth. GAT's manager as registered with the State of Oregon is Matthew Aylworth. GAT's principal place of business as registered with the State of Oregon is 4023 W First Ave., Eugene, Oregon 97402.

12.

Vision Investigative Services, LLC (Vision) is an Oregon limited liability company. Vision's registered agent with the State of Oregon is Matthew Aylworth. Vision's manager as registered with the State of Oregon is Matthew Aylworth. Vision's principal place of business as registered with the State of Oregon is 4023 W First Ave., Eugene, Oregon 97402.

13.

Venue is proper under 28 U.S.C. § 1391 because GAT collected debt from plaintiffs when they resided in Multnomah County, Oregon.

14.

**FACTUAL ALLEGATIONS**

This complaint's allegations are based on personal knowledge as to plaintiffs' behavior and made on information and belief as to the behavior of others. The term "excessive service fee" refers both to GAT's unreasonable and unnecessary "expedited service" fees and GAT's unreasonable fees for service by certified mail.

15.

On or around May 4, 2017, GAT filed a lawsuit against Mr. Chase to collect debt in the Circuit Court of the State of Oregon for Multnomah County in case number 17CV19572. Mr. Chase's credit account debt at issue in case number 17CV19572 was charged off for delinquency in 2015 after he became unable to repay it. In addition to the credit account debt amount of $752.64, the lawsuit represented that GAT was entitled to "actual costs and disbursements". GAT's lawsuit was a communication and a means to attempt to collect debt from Mr. Chase.

16.

On or around June 20, 2017, GAT completed service of its lawsuit on Mr. Chase by certified and first-class mail. GAT's service of its lawsuit on Mr. Chase was routine and could not be considered "expedited service" because there was no justification or requirement for

expediting service. The actual cost of GAT's service on Mr. Chase was approximately $7.

17.

On or around July 24, 2017, GAT filed a statement for costs in its lawsuit against Mr. Chase. GAT's statement acknowledged that its representations were "for use as evidence in court and is subject to penalty of perjury." GAT's statement then falsely represented that expedited service took place, that expedited service was necessary, that GAT was entitled to collect service costs of $45 from Mr. Chase, and that GAT's $45 service cost was a reasonable service fee. GAT's statement was a communication and a means to attempt to collect debt from Mr. Chase. Mr. Chase then paid GAT the debt and excessive service fee in full based on GAT's cost statement. GAT was not allowed to collect an expedited service cost from Mr. Chase because expedited service was not reasonable or necessary in his case.

18.

On or around May 4, 2017, GAT filed a lawsuit against Mr. MacCartney to collect debt in the Circuit Court of the State of Oregon for Multnomah County in case number 17CV18244. Mr. MacCartney's credit account debt at issue in case number 17CV18244 was charged off for delinquency in 2016 after he became unable to repay it. In addition to the credit account debt amount of $1,057.48, the lawsuit represented

that GAT was entitled to "actual costs and disbursements". GAT's lawsuit was a communication and a means to attempt to collect debt from Mr. MacCartney.

19.

On or around May 30, 2017, GAT completed service of its lawsuit on Mr. MacCartney by certified and first-class mail. GAT's service of its lawsuit on Mr. MacCartney was routine and could not be considered "expedited service" because there was no justification or requirement for expediting service. The actual cost of GAT's service on Mr. MacCartney was approximately $7.

20.

On or around June 28, 2017, GAT filed a statement for costs in its lawsuit against Mr. MacCartney. GAT's statement acknowledged that its representations were "for use as evidence in court and is subject to penalty of perjury." GAT's statement then falsely represented that expedited service took place, that expedited service was necessary, that GAT was entitled to collect service costs of $45 from Mr. MacCartney, and that GAT's $45 service cost was a reasonable service fee. GAT's statement was a communication and a means to attempt to collect debt from Mr. MacCartney. GAT then seized 25% of Mr. MacCartney's wages until the debt and excessive service fee was collected in full based on GAT's cost statement. GAT was not allowed to collect an expedited

service cost from Mr. MacCartney because expedited service was not reasonable or necessary in his case.

21.

On or around August 15, 2017, GAT filed a lawsuit against Ms. Mueller to collect debt in the Circuit Court of the State of Oregon for Multnomah County in case number 17CV35553. Ms. Mueller's credit account debt at issue in case number 17CV35553 was charged off for delinquency in 2016 after she became unable to repay it. In addition to the credit account debt amount of $1,303.49, the lawsuit represented that GAT was entitled to "actual costs and disbursements". GAT's lawsuit was a communication and a means to attempt to collect debt from Ms. Mueller.

22.

On or around August 21, 2017, GAT completed service of its lawsuit on Ms. Mueller by certified and first-class mail. GAT's service of its lawsuit on Ms. Mueller was routine and could not be considered "expedited service" because there was no justification or requirement for expediting service. The actual cost of GAT's service on Ms. Mueller was approximately $7.

23.

On or around June 28, 2017, GAT filed a statement for costs in its lawsuit against Ms. Mueller. GAT's statement acknowledged that its

representations were "for use as evidence in court and is subject to penalty of perjury." GAT's statement then falsely represented that expedited service took place, that expedited service was necessary, that GAT was entitled to collect service costs of $45 from Ms. Mueller, and that GAT's $45 service cost was a reasonable service fee. GAT's statement was a communication and a means to attempt to collect debt from Ms. Mueller. Ms. Mueller then paid GAT the debt and excessive service fee in full based on GAT's cost statement. GAT was not allowed to collect an expedited service cost from Ms. Mueller because expedited service was not reasonable or necessary in her case.

24.

By adopting the FDCPA, Congress elevated the right of consumers such as plaintiffs to be completely free from a debt collector's unlawful collection practices. The invasion of that right by GAT is a concrete injury in fact for which this Court may provide relief. GAT's false, deceptive, and misleading statements and unfair and unconscionable tactics to collect service fee amounts that were not permitted by law presented an actual material risk of harm – including that as a result of GAT's violation of the law as set forth in this complaint, plaintiffs and members of the putative class would pay amounts that GAT was not entitled to collect.

25.

Given the opportunity for discovery, the evidence will show that GAT's collections of excessive service fee amounts prohibited by Oregon law and in violation of the FDCPA as alleged in this complaint represent a common collection scheme. As part of its collection scheme, GAT filed materially similar statements in thousands of other Oregon consumer lawsuits to collect, or attempt to collect, materially similar unnecessary expedited service fees in amounts that were prohibited by Oregon law, and that overstated the permissible fee amount in violation of the FDCPA and UTPA.

26.

The evidence will show that GAT falsely represented that expedited service was necessary in cases where expedited service was not necessary. The evidence will show GAT collects service fees from consumers in excess of the actual cost of the service. The evidence will show that GAT unfairly profited by operating the very service company that GAT used to pass on its excessive service fees to consumers.

27.

## CLASS ACTION ALLEGATIONS

Under FRCP 23, plaintiffs bring this action on behalf of themselves and all other similarly situated individual consumers. The class is initially defined as:

a) all individual consumers with Oregon addresses,

b) who GAT filed a lawsuit against to collect a consumer debt in the past year,

c) which included a cost statement claiming any "excessive service fee" as described in paragraph 14 of this complaint, and

d) who suffered an ascertainable loss of money caused by GAT's collection of an excessive service fee.

28.

A class action is proper under FRCP 23(a) because based on Oregon court records, the class consists of thousands of individual consumers, and joinder of all members is impracticable. Each class member is easily identifiable based on GAT's files and Oregon court records. Excluded from the class are all attorneys for the class, officers and members of GAT, any judge who sits on the case, and all jurors and alternate jurors who sit on the case.

29.

This action can be maintained as a class action under FRCP 23(a) and (b) because there are questions of law and fact common to the class members, which predominate over any questions relating to individual class members, including but not limited to:

a) Whether GAT's behavior as alleged in this complaint causes likelihood of confusion or of misunderstanding as to whether the source of its lawsuits (i.e. consumer credit agreements) permit GAT to collect costs that are unnecessary and unreasonable and excessive,

b) Whether statements falsely representing that expedited service was necessary violated the FDCPA,

c) Whether GAT's collection of unnecessary expedited service fees violated the FDCPA,

d) Whether statements falsely representing the amount of GAT's service costs violated the FDCPA, and

e) Whether GAT's collection of excessive service costs violated the FDCPA and UTPA.

30.

Plaintiffs' claims are typical of the claims of the class members, as they are based on the same factual circumstances, form statements, common collection scheme, and legal theories. Plaintiffs have no interests adverse to the class members.

31.

Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Plaintiffs have retained nationally known and locally respected counsel experienced in class action litigation and FDCPA litigation to further ensure such representation and protection of the class. Plaintiffs and their counsel intend to prosecute this action vigorously and have the resources necessary to successfully try this case to judgment.

32.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent class-wide adjudication, members of the class are without effective recourse. Because of the relatively small monetary value of each individual class member's claim, few, if any, class members could afford to prosecute an individual action against GAT. The federal court filing fee alone is double the maximum statutory damages available under the UTPA. Absent class treatment, GAT's alleged wrongdoing would go unabated,

and no class member would be afforded the opportunity to seek judicial relief, whether for themselves or for the public good generally.

33.

A class action is appropriate under FRCP 23(b)(3) because the questions of law and fact regarding the nature and legality of GAT's practices as alleged in this complaint predominate over any questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, for the following reasons:

a) The prosecution of separate actions creates a risk of inconsistent or varying rulings,

b) The common questions of law and fact described above predominate over questions affecting only individual members,

c) Individual class members would have little interest in controlling the prosecution of separate actions because the amount of each individual claim is relatively small compared to the complexities of the issues and the expenses of litigation,

d) This is a desirable forum because this Court has significant experience managing class actions under the FDCPA and UTPA,

e) A class action will be an efficient method of adjudicating the claims of the class members, and

f) Class members have claims that are not significant in amount relative to the expense of the litigation, so separate actions would not afford significant relief to the members of the class.

34.

## CLAIMS FOR RELIEF

## – Claim 1 for the Putative Class Against GAT –

## Violation of the FDCPA

GAT's choice to falsely represent that expedited service was necessary when expedited service was not necessary, and to falsely represent that excessive service fees were reasonable, necessary, or otherwise lawful when that was not the case, and to unfairly collect excessive service fees from plaintiffs and the putative class members when Oregon law prohibited the collection of excessive service fees, was a false, deceptive, and misleading representation and means to collect debt, a false representation of the amount of debt, and an unfair and unconscionable means in collection of debt that is not allowed by law, in violation of 15 U.S.C. § 1692e, § 1692e(2)(A), § 1692e(5), § 1692e(10), § 1692f, and § 1692f(1).

35.

As a result of GAT's violation of the FDCPA as alleged above, plaintiffs and all other similarly situated individual consumers are entitled to actual damages for refunds of amounts paid to or collected by GAT for its unlawful fees under § 1692k(a)(1), statutory damages under § 1692k(a)(2)(B), and reasonable fees and costs under § 1692k(a)(3).

36.

**– Claim 2 for the Putative Class Against GAT –**

**Violation of the UTPA**

In the course of its business as a debt collector, GAT caused likelihood of confusion and of misunderstanding as to whether the source of its lawsuits (i.e. consumer credit agreements) permitted GAT to collect costs that were unnecessary and unreasonable and excessive, in violation of ORS 646.608(1)(b), causing plaintiffs and putative class members to suffer an ascertainable loss of money in the form of excessive service fees collected by GAT.

37.

GAT's conduct as alleged in this complaint was reckless, in pursuit of profit, and constituted a wanton, outrageous and oppressive violation of the rights of plaintiffs and the putative class members to be free from unlawful trade practices. As a result of GAT's violation of the UTPA as alleged above, plaintiffs and all other similarly situated individual consumers are entitled to $200 statutory damages per individual, punitive damages, and reasonable fees and costs under ORS 646.638.

38.

**– Claim 3 for the Putative Class against GAT and Vision –**

**Unjust Enrichment**

Defendants worked together in concert in a common scheme to profit from the collection of service fees that were unnecessary and unreasonable and excessive, as alleged in this complaint. As a matter of justice and equity, defendants should not be able to retain the excessive service fees they collected from plaintiffs and the putative class. Plaintiffs and the putative class are entitled to restitution based on defendants' unjust enrichment as alleged in this complaint.

39.

Demand for jury trial.

# PRAYER FOR RELIEF

Plaintiffs seek relief as follows:

**A.** An order that this case may proceed as a class action and an order that GAT violated the FDCPA and UTPA,

**B.** An order and judgment in favor of plaintiffs and the class against defendants for damages determined to have been sustained by them, including actual damages, maximum statutory damages, punitive damages, and equitable relief and reasonable fees and costs.

**C.** An order and judgment in favor of plaintiffs and the class against defendants for maximum pre-judgment and post-judgment interest, and

**D.** For any other relief this Court may determine is fair and proper.

April 3, 2018

RESPECTFULLY FILED,

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

## PROOF OF MAILING

I declare and certify that on the date below I caused a copy of this complaint to be mailed to the following:

**Ellen Rosenblum**
**Oregon Attorney General**
**Oregon Department of Justice**
**1162 Court Street NE**
**Salem, Oregon 97301-4096**

April 3, 2018

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000