**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

**Kelly D. Jones, OSB No. 074217**
kellydonovanjones@gmail.com
Direct 503-847-4329

**Matthew Sutton, OSB No. 924797**
msutton@integra.net
Direct 541-772-8050

Of Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CARLTON CHASE**, **ERIC MACCARTNEY** and **LUANNE MUELLER**, individually and on behalf of all others, | Case No. 3:18-cv-00568-AC **CLASS ACTION ALLEGATION AMENDED COMPLAINT** |
| Plaintiffs, | Unlawful Collection Practices Unlawful Trade Practices |
| v. | Demand for Jury Trial |
| **GORDON, AYLWORTH & TAMI, P.C.** and **VISION INVESTIGATIVE SERVICE, LLC**, | |
| Defendants. | |

**AMENDED COMPLAINT** – Page 1 of 31

1.

## INTRODUCTION

Laws protecting people from unfair debt collection date back to America's Founding Fathers. The Constitution instructed Congress to enact uniform laws on debt forgiveness. Almost 75 years after the Constitution was ratified, Congress passed the 13th Amendment, prohibiting all forms of indentured servitude. Another 100 years later, the United States Supreme Court began declaring debtors' prisons unconstitutional. In 1977, Congress passed the Fair Debt Collection Practices Act (FDCPA) to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Oregon law specifically prohibits collectors from charging excessive service fees.

But not all collectors choose to follow the law.

2.

Oregon debt collection law firm Gordon, Aylworth & Tami, P.C. (GAT) is the largest debt collection law firm in Oregon and files thousands of lawsuits a year against Oregon consumers. GAT's largest client is Midland Funding, LLC, a national debt collector that buys portfolios of defaulted consumer debts from national banks and other

**AMENDED COMPLAINT** – Page 2 of 31

creditors for pennies on the dollar. Midland Funding, LLC (collectively "Midland") and its alter ego and sister entity Midland Credit Management, Inc. are both owned by Encore Capital Group, Inc. When it is unsuccessful in collecting its debts on its own, Midland employs debt collection law firms like GAT as agents-in-fact to collect the debts by suing consumers, obtaining judgments against them, and then garnishing wages and bank accounts. The vast majority of judgments GAT obtains against consumers are default judgments because many consumers do not have the time, resources, or legal knowledge required to mount a defense.

<div align="center">3.</div>

When GAT files a debt collection lawsuit against an Oregon consumer and the consumer does not answer or appear, GAT obtains a default order and judgment against the consumer. As part of the default judgment, GAT can request an award costs and disbursements incurred by its client from the court, only as allowed by Oregon law. Costs incurred by a prevailing party that are actually incurred and paid to a third party to execute service of the summons and complaint in the debt collection lawsuit are allowed as recoverable costs and disbursements, but the manner of service and the costs allowed are specifically regulated by Oregon law.

**AMENDED COMPLAINT** – Page 3 of 31

4.

Oregon Rule of Civil Procedure (ORCP) 68 A(2) provides that
"'[c]osts and disbursements' are reasonable and necessary expenses
incurred in the prosecution or defense of an action, other than for legal
services…" ORCP 68 B provides that "[i]n any action, costs and
disbursements shall be allowed to the prevailing party unless these
rules or any other rule or statute direct that in the particular case costs
and disbursements shall not be allowed to the prevailing party or shall
be allowed to some other party, or unless the court otherwise directs."

5.

ORS 20.115 provides that service fees paid to a party other than
the sheriff are allowable as costs and disbursements, but the amount
requested cannot exceed what the sheriff charges at the time of the
service, as set forth in the version of ORS 21.300 in effect at the time of
service. Service costs paid to a person besides a sheriff may exceed what
the sheriff charges only in amounts for: the reasonable cost of service
outside this state, the reasonable rate for mileage, the reasonable cost
of locating and serving a party when routine service methods are
unsuccessful, or the *reasonable* cost of expedited service *if expedited
service is necessary*.

**AMENDED COMPLAINT** – Page 4 of 31

6.

The amount of sheriff service costs allowed under ORS 21.300 prior to January 1, 2018 was $36.

7.

ORCP 7 E provides that service of the summons and complaint cannot be executed by the party itself *or its attorney*, unless it is service by mail. Most lawyers and law firms use a private arms-length professional process server, but not GAT. Instead GAT decided to set up its own dummy service company, Vision Investigative Services, LLC (Vision), a wholly owned and operated subsidiary of GAT.

8.

Under the Oregon Rules of Professional Conduct (ORPC) it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation that reflects adversely on the lawyer's fitness to practice law" or to "engage in conduct that is prejudicial to the administration of justice." ORPC 8.4(a)(3)-(4). A lawyer is also prohibited from counseling "a client to engage, or assist a client, in conduct that the lawyer knows is illegal or fraudulent…" and a lawyer may not "enter into an agreement for, charge or collect an illegal or clearly excessive fee or a clearly excessive amount for expenses." ORPC 1.2(c), 1.5(a). In representing a client, a lawyer cannot knowingly "make a false statement of material fact or law to a third

**AMENDED COMPLAINT** – Page 5 of 31

person" or fail to disclose a material fact when disclosure is necessary to avoid assisting an illegal or fraudulent act by a client." ORPC 4.1.

9.

Oregon law and the ORPC do not contemplate or allow for a law firm to set up a dummy service company that is a wholly owned and operated entity of the law firm so that the law firm (or its client) can profit from unreasonable, prohibited, and unlawfully inflated service costs that are not actually incurred or paid to a third party. The FDCPA and the Oregon Unlawful Trade Practices Act (UTPA) provide a private cause of action for these unfair practices and the many Oregon consumers who have been concretely harmed by these practices deserve relief from this Court.

10.

On behalf of its client Midland, GAT filed lawsuits against plaintiffs (and the putative class) alleging an amount owed for alleged defaulted debts purchased by Midland. In the complaints that it served on the plaintiffs, in addition to the debt and post-judgment interest, it stated that its client "is also entitled to actual costs and disbursements." *See* Exhibit 1. Service of the summonses and complaints on plaintiffs was accomplished via first class and certified mail with return receipt requested. *See* Exhibit 1. The plaintiffs all defaulted and then GAT, without knowledge of the plaintiffs, represented to the Court that its

**AMENDED COMPLAINT** – Page 6 of 31

client was "entitled to the recovery of reasonable and necessary costs and disbursements as authorized by ORCP 68A (2), including expedited service fees pursuant to ORS 20.115(2)(d). The costs, as detailed below, are billed directly to the client and are not overhead expenses. Expedited Service was necessary and the service fees set forth below reflect the actual costs of the service." *See* Exhibit 1. In each case, GAT requested $45 for the alleged actual and necessary costs of this "expedited" service. But GAT failed to inform the Court that it owned and operated the dummy service entity that performed the service, and falsely stated that the $45 was the actual cost of service incurred by GAT's client, that the service costs were not "overhead" of GAT, and that additional cost for expedited service was both reasonable and necessary. Plaintiffs subsequently paid the inflated $45 service costs to GAT.

11.

Unknown to plaintiffs at the time, Oregon law prohibited GAT from collecting service fees not actually incurred by its client and paid to a third party, and Oregon law prohibited GAT from collecting inflated costs of service for routine mailing that were not permissible because they were not both reasonable and necessary. GAT's $45 fees were not reasonable when the actual cost of service by mail was approximately $7. Plaintiffs, through counsel, discovered that GAT funneled these excessive and unlawful service fees through a dummy service company

**AMENDED COMPLAINT** – Page 7 of 31

that was controlled, owned, and operated by GAT. By charging and collecting excessive service fees and funneling the profits through a dummy service company, GAT puts local debt collectors that do not overcharge consumers at a competitive disadvantage, and GAT extracts illegal profits from Oregon consumers who can least afford it. Although the unlawful service fees may not have caused substantial damage to each plaintiff individually, the aggregate damages suffered by similarly situated consumers are indeed substantial.

12.

To paraphrase Judge Posner, "only a lunatic or a fanatic" goes to court on her own over a relatively small loss. So, plaintiffs file this lawsuit as a class action, on behalf of themselves, and thousands of other consumers ripped off by GAT's unlawful collection and trade practices.

13.

Plaintiffs file this case in hopes of stopping GAT from continuing to demand and collect excessive service fees in its lawsuits and to persuade GAT to dismantle its unlawful and unethical dummy service company. They also hope to force defendants to return the thousands of dollars in excessive service fees that they have unlawfully collected from unwitting Oregon consumers.

**AMENDED COMPLAINT** – Page 8 of 31

14.

**JURISDICTION AND THE PARTIES**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367 because the FDCPA, 15 U.S.C. § 1692, *et seq.*, is a federal consumer protection law, and because plaintiffs' claim under Oregon's UTPA is so related to the FDCPA claim that they form part of the same case and controversy.

15.

Plaintiffs are individuals living in Multnomah County, Oregon and "consumers" protected by the FDCPA because they allegedly owed delinquent credit account debt incurred for personal, family, household purposes. Plaintiffs are also "persons" protected by the UTPA.

16.

GAT is a "person" governed by the UTPA because GAT and its attorneys regularly collect debts in the course of their business and occupation. GAT advertises itself as a "high-volume" law firm practicing debt collection throughout the Pacific Northwest since 1978. GAT and its predecessor corporations have a pattern and practice of violating the laws governing debt collection in Oregon. See, e.g., *Gordon v. Rosenblum*, 361 Or. 352 (2017), etc.

17.

GAT is a "debt collector" as that term is defined in the FDCPA because it regularly collects defaulted debts owed to, and on behalf of, others, including Midland in this case, using the United States Postal Service, and the principal purpose of GAT's business is the collection of delinquent debts owed to others.

18.

GAT is an Oregon corporation. GAT's registered agent with the State of Oregon is Matthew Aylworth. GAT's manager as registered with the State of Oregon is Matthew Aylworth. GAT's principal place of business as registered with the State of Oregon is 4023 W First Ave., Eugene, Oregon 97402.

19.

Vision Investigative Services, LLC (Vision) is an Oregon limited liability company. Vision's registered agent with the State of Oregon is Matthew Aylworth. Vision's manager as registered with the State of Oregon is Matthew Aylworth. Vision's principal place of business as registered with the State of Oregon is 4023 W First Ave., Eugene, Oregon 97402, the same address as GAT. Vision is a wholly owned and operated subsidiary of GAT. *See* Docket #13.

**AMENDED COMPLAINT** – Page 10 of 31

20.

Venue is proper under 28 U.S.C. § 1391 because GAT collected debt from plaintiffs when they resided in Multnomah County, Oregon.

21.

## ADDITIONAL FACTUAL ALLEGATIONS

This complaint's allegations are based on personal knowledge as to plaintiffs' behavior and made on information and belief as to the behavior of others. The term "excessive service fee" refers both to GAT's prohibited service fees in general, GAT's unreasonable and unnecessary "expedited service" fees, and GAT's unreasonable fees for service by mail.

22.

On or around May 4, 2017, GAT filed a lawsuit against Mr. Chase to collect debt in the Circuit Court of the State of Oregon for Multnomah County in case number 17CV19572. Mr. Chase's credit account debt at issue in case number 17CV19572 was charged off for delinquency in 2015 after he became unable to repay it. In addition to the credit account debt amount of $752.64, the complaint filed in the lawsuit represented that GAT was entitled to "actual costs and disbursements". *See* Exhibit 1. GAT's complaint was a communication and a means to attempt to collect debt from Mr. Chase.

**AMENDED COMPLAINT** – Page 11 of 31

23.

On or around June 20, 2017, GAT completed service of its lawsuit on Mr. Chase by certified and first-class mail. *See* Exhibit 1. GAT's service of its lawsuit on Mr. Chase was routine and could not be considered "expedited service" because there was no justification or requirement for expediting service. The actual cost of GAT's service on Mr. Chase was approximately $7.

24.

On or around July 24, 2017, GAT filed a statement for costs in its lawsuit against Mr. Chase. *See* Exhibit 1. GAT's statement acknowledged that its representations were "for use as evidence in court and is subject to penalty of perjury." *Id*. GAT's statement then falsely represented that expedited service took place, that expedited service was necessary, that GAT was entitled to collect service costs of $45 from Mr. Chase, that GAT's $45 service cost was a reasonable service fee, that GAT's $45 service cost "reflect the actual costs of the service", and that the service costs were "billed directly to the client and are not overhead expenses." *Id*. The cost statement was a means to attempt to collect debt from Mr. Chase. Mr. Chase then paid GAT the debt and excessive service fee in full based on GAT's cost statement. GAT was not allowed to collect a $45 expedited service cost from Mr. Chase because it was not the amount that was actually paid for the service, nor was it actually

**AMENDED COMPLAINT** – Page 12 of 31

incurred by Midland, and because expedited service was not a reasonable or necessary cost in his case. The false statements and lack of disclosure in the cost statement that GAT owned and operated Vison was a fraud upon the Court. Mr. Chase then satisfied the default judgment prior to this action being filed. *See* Exhibit 1.

25.

On or around May 4, 2017, GAT filed a lawsuit against Mr. MacCartney to collect debt in the Circuit Court of the State of Oregon for Multnomah County in case number 17CV18244. Mr. MacCartney's credit account debt at issue in case number 17CV18244 was charged off for delinquency in 2016 after he became unable to repay it. In addition to the credit account debt amount of $1,057.48, the complaint filed in the lawsuit represented that GAT was entitled to "actual costs and disbursements". *See* Exhibit 1. GAT's complaint was a communication and a means to attempt to collect debt from Mr. McCartney.

26.

On or around May 30, 2017, GAT completed service of its lawsuit on Mr. MacCartney by certified and first-class mail. *See* Exhibit 1. GAT's service of its lawsuit on Mr. MacCartney was routine and could not be considered "expedited service" because there was no justification or requirement for expediting service. The actual cost of GAT's service on Mr. MacCartney was approximately $7.

**AMENDED COMPLAINT** – Page 13 of 31

27.

On or around June 28, 2017, GAT filed a statement for costs in its lawsuit against Mr. MacCartney. *See* Exhibit 1. GAT's statement acknowledged that its representations were "for use as evidence in court and is subject to penalty of perjury." *Id*. The cost statement was a means to attempt to collect debt from Mr. MacCartney. Mr. MacCartney then paid GAT the debt and excessive service fee in full based on GAT's cost statement. GAT was not allowed to collect a $45 expedited service cost from Mr. MacCartney because it was not the amount that was actually paid for the service, nor was it actually incurred by Midland, and because expedited service was not a reasonable or necessary cost in his case. The false statements and lack of disclosure in the cost statement that GAT owned and operated Vison was a fraud upon the Court. Mr. MacCartney then satisfied the default judgment prior to this action being filed. *See* Exhibit 1.

28.

On or around August 15, 2017, GAT filed a lawsuit against Ms. Mueller to collect debt in the Circuit Court of the State of Oregon for Multnomah County in case number 17CV35553. Ms. Mueller's credit account debt at issue in case number 17CV35553 was charged off for delinquency in 2016 after she became unable to repay it. In addition to the credit account debt amount of $1,303.49, the complaint filed in the

**AMENDED COMPLAINT** – Page 14 of 31

lawsuit represented that GAT was entitled to "actual costs and disbursements". *See* Exhibit 1. GAT's complaint was a communication and a means to attempt to collect debt from Ms. Mueller.

29.

On or around August 21, 2017, GAT completed service of its lawsuit on Ms. Mueller by certified and first-class mail. *See* Exhibit 1. GAT's service of its lawsuit on Ms. Mueller was routine and could not be considered "expedited service" because there was no justification or requirement for expediting service. The actual cost of GAT's service on Ms. Mueller was approximately $7.

30.

On or around June 28, 2017, GAT filed a statement for costs in its lawsuit against Ms. Mueller. GAT's statement acknowledged that its representations were "for use as evidence in court and is subject to penalty of perjury." *See* Exhibit 1. GAT's statement acknowledged that its representations were "for use as evidence in court and is subject to penalty of perjury." *Id.* The cost statement was a means to attempt to collect debt from Ms. Mueller. Ms. Mueller then paid GAT the debt and excessive service fee in full based on GAT's cost statement. GAT was not allowed to collect a $45 expedited service cost from Ms. Mueller because it was not the amount that was actually paid for the service, nor was it actually incurred by Midland, and because expedited service was not a

**AMENDED COMPLAINT** – Page 15 of 31

reasonable or necessary cost in her case. The false statements and lack of disclosure in the cost statement that GAT owned and operated Vison was a fraud upon the Court. Ms. Muller then satisfied the default judgment prior to this action being filed. *See* Exhibit 1.

31.

By adopting the FDCPA, Congress elevated the right of consumers such as plaintiffs to be completely free from a debt collector's unlawful collection practices. The invasion of that right by GAT, as well as the actual damages paid by the plaintiffs, are concrete injuries in fact for which this Court may provide relief. GAT's false, deceptive, and misleading statements and unfair and unconscionable tactics to collect service fee amounts that were not permitted by law presented an actual material risk of harm – including that as a result of GAT's violation of the law as set forth in this complaint, plaintiffs and members of the putative class would pay, and in the case of plaintiffs, did in fact pay, amounts that GAT was not entitled to collect.

32.

Given the opportunity for discovery, the evidence will show that GAT's collections of excessive service fee amounts prohibited by Oregon law, in violation of GAT's professional conduct duties, and in violation of the FDCPA and UTPA as alleged in this complaint, represent a common collection scheme. As part of its collection scheme, GAT filed

**AMENDED COMPLAINT** – Page 16 of 31

materially similar statements in thousands of other Oregon consumer lawsuits to collect, or attempt to collect, materially similar unlawful service fees, unnecessary expedited service fees in amounts that were prohibited by Oregon law, and that overstated, and caused the likelihood of confusion or misunderstanding about, the permissible fee amount, in violation of the FDCPA and UTPA.

33.

The evidence will show that GAT falsely represented that expedited service was necessary in cases where expedited service was not necessary. The evidence will show that GAT collects service fees from consumers in excess of the actual cost of the service and that the inflated costs are not actually incurred by GAT's clients. The evidence will show that GAT unfairly profited by owning and operating the very service company that GAT used to extract its excessive service fees from Oregon consumers.

**AMENDED COMPLAINT** – Page 17 of 31

34.

## CLASS ACTION ALLEGATIONS

Under FRCP 23, plaintiffs bring this action on behalf of themselves and all other similarly situated individual consumers. The class is initially defined as:

a) all individual consumers with Oregon addresses,

b) who GAT filed a lawsuit against to collect a consumer debt on or after April 3, 2017,

c) who Vision served a complaint to stating that GAT's client was entitled to actual costs and disbursements,

d) who had lawsuits filed against them in which GAT included a cost statement claiming any service fee or costs "reflect the actual costs of the service", are "billed directly to the client and are not overhead expenses", or requesting additional costs for "expedited" service because such service was "necessary", and

e) who suffered an ascertainable loss of money caused by GAT's collection of an excessive service fee.

35.

A class action is proper under FRCP 23(a) because based on Oregon court records, the class consists of thousands of individual consumers, and joinder of all members is impracticable. Each class member is easily identifiable based on GAT's files and Oregon court records. Excluded from the class are all attorneys for the class, officers and members of GAT, any judge who sits on the case, and all jurors and alternate jurors who sit on the case.

36.

This action can be maintained as a class action under FRCP 23(a) and (b) because there are questions of law and fact common to the class members, which predominate over any questions relating to individual class members, including but not limited to:

a) Whether GAT's behavior as alleged in this complaint, including its statements in the complaints it served on consumers that it was seeking "actual costs and disbursements" and the statements made to the Court in its false and deceptive costs statements caused the likelihood of confusion or of misunderstanding as to the source of GAT's services, the source of the service fees, or that Midland approved of GAT's requested service fees, and caused ascertainable losses to plaintiffs and the putative class in the

form of inflated and prohibited service costs that GAT collected or was paid,

b) Whether GAT's representations in the complaints it served on consumers that only "actual costs and disbursements" were being requested, when GAT knew that it would be requesting and collecting amounts that were not the actual costs paid for service, and were not actually incurred by GAT's client, was a false, deceptive, or misleading representation, or a deceptive or unfair or unconscionable means to collect the debt in violation of the FDCPA,

c) Whether GAT's collection of debts by filing fraudulent and deceptive cost statements with the Court stating that the service fees were the actual amount paid for mail service, were incurred by GAT's client, were not overhead of GAT, and falsely stating that the inflated amount for expedited service was reasonable and necessary when it was it was not, and the failure to disclose to the Court that the service company that effectuated service was a wholly owned and operated subsidiary of GAT, is a false, deceptive, and misleading means to collect debt, a false representation of the amount of debt, and an unfair and unconscionable means in collection of debt that is not allowed by law, in violation of the FDCPA,

**AMENDED COMPLAINT** – Page 20 of 31

d) Whether GAT's scheme of collecting excessive and prohibited service fees through a dummy service company that it wholly owns and operates so that it (or its clients) can increase its profits is an unfair and unconscionable means in collection of debt in violation of the FDCPA.

37.

Plaintiffs' claims are typical of the claims of the class members, as they are based on the same factual circumstances, form statements, common collection scheme, and legal theories. Plaintiffs have no interests adverse to the class members.

38.

Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Plaintiffs have retained nationally known and locally respected counsel experienced in class action litigation and FDCPA litigation to further ensure such representation and protection of the class. Plaintiffs and their counsel intend to prosecute this action vigorously and have the resources necessary to successfully try this case to judgment.

39.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent class-wide adjudication, members of the class are without effective recourse.

**AMENDED COMPLAINT** – Page 21 of 31

Because of the relatively small monetary value of each individual class member's claim, few, if any, class members could afford to prosecute an individual action against GAT. The federal court filing fee alone is double the maximum statutory damages available under the UTPA. Absent class treatment, GAT's alleged wrongdoing would go unabated, and no class member would be afforded the opportunity to seek judicial relief, whether for themselves or for the public good generally.

40.

A class action is appropriate under FRCP 23(b)(3) because the questions of law and fact regarding the nature and legality of GAT's practices as alleged in this complaint predominate over any questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, for the following reasons:

a)  The prosecution of separate actions creates a risk of inconsistent or varying rulings,

b)  The common questions of law and fact described above predominate over questions affecting only individual members,

c)  Individual class members would have little interest in controlling the prosecution of separate actions because the amount of each individual claim is relatively small compared to the complexities of the issues and the expenses of litigation,

**AMENDED COMPLAINT** – Page 22 of 31

d) This is a desirable forum because this Court has significant experience managing class actions under the FDCPA and UTPA,

e) A class action will be an efficient method of adjudicating the claims of the class members, and

f) Class members have claims that are not significant in amount relative to the expense of the litigation, so separate actions would not afford significant relief to the members of the class.

41.

## CLAIMS FOR RELIEF

### – Claim 1 for the Putative Class Against GAT –

### Violations of the FDCPA

GAT's representations in the complaints it filed and served on consumers that it was seeking only "actual costs and disbursements" when it knew that it would be collecting service costs that were more than the actual costs paid for the service by mail, as well as an unnecessary, unreasonable, and excessive fee for expedited service, is a false, deceptive, and misleading representation and means to collect debt and an unfair and unconscionable means in collection of debt in violation of 15 U.S.C. § 1692e, § 1692e(2)(A), § 1692e(5), § 1692e(10), and § 1692f.

42.

GAT's collection of excessive service fees by submitting materially false, deceptive, and misleading cost statements stating that the service fees represented the actual service costs paid for mailed service, that the service fees were actually incurred by its client, that the service fees were not overhead, that expedited service was conducted, that expedited service was necessary, that the cost of service was reasonable, and the failure to disclose that GAT owned and operated the entity that effectuated the service, is a false, deceptive, and misleading means to

**AMENDED COMPLAINT** – Page 24 of 31

collect debt, a false representation of the amount of debt, and an unfair and unconscionable means in collection of debt that is not allowed by law, in violation of 15 U.S.C. § 1692e, § 1692e(2)(A), § 1692e(2)(B), § 1692e(5), § 1692e(10), § 1692f, and § 1692f(1).

43.

GAT's collection of excessive service fees from consumers that were not the actual costs of the mailed service, that were not actually paid to a third party, that included overhead expenses of GAT, that were not actually incurred by its clients, that included excessive, unreasonable, and unnecessary expedited service costs, and that were based upon false, deceptive, or misleading costs statements submitted to the Court, is a false, deceptive, and misleading means to collect debt, a false representation of the amount of debt, and an unfair and unconscionable means in collection of debt that is not allowed by law, in violation of 15 U.S.C. § 1692e, § 1692e(2)(A), § 1692e(2)(B), § 1692e(5), § 1692e(10), § 1692f, and § 1692f(1).

44.

GAT's scheme of collecting excessive and prohibited service fees through a dummy service company that it wholly owns and operates so that it (or its clients) can increase its profits is professionally unethical and is an unfair and unconscionable means in collection of debt in violation of 15 U.S.C. § 1692f.

**AMENDED COMPLAINT** – Page 25 of 31

45.

As a result of GAT's violations of the FDCPA as alleged above, plaintiffs and all other similarly situated individual consumers are entitled to actual damages of amounts paid to or collected by GAT for its unlawful service fees under § 1692k(a)(1), statutory damages under § 1692k(a)(2)(B), and reasonable fees and costs under § 1692k(a)(3).

46.

**– Claim 2 for the Putative Class Against GAT –**

**Violations of the UTPA**

GAT's practice of stating in the complaints it filed and served on consumers that it was seeking only "actual costs and disbursements" when it knew that it would be collecting service costs that were more than the actual costs paid for the service by mail, as well as an unnecessary, unreasonable, and excessive fee for expedited service GAT caused likelihood of confusion and of misunderstanding as to the source of its services and the true source of the service fees in violation of ORS 646.608(1)(b), causing plaintiffs and putative class members to suffer an ascertainable loss of money in the form of excessive service fees paid to, or collected by, GAT.

47.

GAT's collection of excessive service fees through submitting materially false, deceptive, and misleading cost statements stating that the service fees represented the actual service costs paid for mailed service, that the service fees were actually incurred by its client, that the service fees were not overhead, that expedited service was conducted, that expedited service was necessary, that the cost of service was reasonable, and the failure to disclose that GAT owned and operated the entity that effectuated the service, caused the likelihood of confusion and of misunderstanding as to the source of its services and the true source of the service fees, and that GAT's client had approved of GAT's prohibited service fees, causing plaintiffs and putative class members to suffer an ascertainable loss of money in the form of excessive service fees paid to, or collected by, GAT.

48.

GAT's conduct as alleged in this complaint was reckless, in pursuit of profit, and constituted a wanton, outrageous and oppressive violation of the rights of plaintiffs and the putative class members to be free from unlawful trade practices. As a result of GAT's violation of the UTPA as alleged above, plaintiffs and all other similarly situated individual consumers are entitled to $200 statutory damages per

**AMENDED COMPLAINT** – Page 27 of 31

individual, punitive damages, and reasonable fees and costs under ORS 646.638.

49.

**– Claim 3 for the Putative Class against GAT and Vision –**

**Unjust Enrichment**

Defendants are alter egos of each other and worked together in concert in a common scheme to profit from the collection of service fees that were not allowed by law, were not the actual costs paid to any third party for service by mail, were unnecessary and unreasonable and excessive, as alleged in this complaint. As a matter of justice and equity, defendants should not be able to retain the excessive service fees they collected from plaintiffs and the putative class. Plaintiffs and the putative class are entitled to restitution based on defendants' unjust enrichment as alleged in this complaint.

50.

Plaintiffs reserve the right and may intend to seek amendment of this complaint to add Midland upon learning through discovery that Midland directed, participated in, or profited from the unlawful service fee collection scheme set forth in this complaint.

51.

Demand for jury trial.

**AMENDED COMPLAINT** – Page 28 of 31

## PRAYER FOR RELIEF

Plaintiffs seek relief as follows:

**A.** An order that this case may proceed as a class action and an order that GAT violated the FDCPA and UTPA,

**B.** An order and judgment in favor of plaintiffs and the class against defendants for damages determined to have been sustained by them, including actual damages, maximum statutory damages, punitive damages, and equitable relief and reasonable fees and costs.

**C.** An order and judgment in favor of plaintiffs and the class against defendants for maximum pre-judgment and post-judgment interest, and

**D.** For any other relief this Court may determine is fair and proper.

June 22, 2018

**RESPECTFULLY FILED,**

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

**AMENDED COMPLAINT** – Page 29 of 31

## CERTIFICATE OF SERVICE

I certify that I caused a copy of this document and all attachments to be
served on all parties to this action by CM/ECF.


June 22, 2018

<div style="margin-left: 40%;">

s/ Michael Fuller

**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

</div>

**AMENDED COMPLAINT** – Page 30 of 31

## PROOF OF MAILING

I declare and certify that on the date below I caused a copy of this amended complaint to be mailed to the following:

> **Ellen Rosenblum**
> **Oregon Attorney General**
> **Oregon Department of Justice**
> **1162 Court Street NE**
> **Salem, Oregon 97301-4096**

June 22, 2018

<div style="text-align:right">

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

</div>

**AMENDED COMPLAINT** – Page 31 of 31