IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CARLTON CHASE, ERIC MACCARTNEY**, and **LUANNE MUELLER**, individually and on behalf of others,<br><br>    Plaintiffs,<br><br> v.<br><br>**GORDON, AYLWORTH & TAMI, P.C.** and **VISION INVESTIGATIVE SERVICE**,<br><br>    Defendants. | Case No. 3:18-cv-568-AC<br><br>**OPINION AND ORDER** |

Michael Fuller, OLSENDAINES, US Bancorp Tower, 111 SW Fifth Ave., Suite 3150, Portland, OR 97204; Kelly D. Jones, 819 SE Morrison St., Suite 255, Portland, OR 97214; and Matthew Sutton, 205 Crater Lake Ave., Medford, OR 97504. Of Attorneys for Plaintiffs.

Xin Xu, XIN XU LAW GROUP, 5285 Meadows Road, Suite 181, Lake Oswego, OR 97035; and Matthew R. Aylworth, DANIEL N. GORDON, P.C., 4023 W. First Ave., Eugene, OR 97402. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Carlton Chase ("Chase"), Eric MacCartney ("MacCarthy"), and Luanne

Mueller ("Mueller,") (collectively, "Plaintiffs") bring this putative class action against

Defendants Gordon, Aylworth & Tami, P.C. ("GAT") and Vision Investigative Services

("Vision") (collectively, "Defendants"). GAT is an Oregon law firm, and Vision is a wholly

PAGE 1 – OPINION AND ORDER

owned subsidiary of GAT. Plaintiffs allege that GAT violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and Oregon's Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. §§ 646.605-656. Plaintiffs also allege against both Defendants a claim for common law unjust enrichment. Defendants have moved to dismiss all claims asserted by Plaintiffs under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and to dismiss Plaintiffs' state law claims (both statutory and common law) under Oregon's anti-SLAPP statute, Or. Rev. Stat. § 31.150. ECF 19. United States Magistrate Judge John Acosta issued Findings and Recommendations, recommending that this Court dismiss all claims based on both the *Rooker-Feldman* doctrine and issue preclusion and declining to address Defendants' anti-SLAPP arguments. ECF 37. Plaintiffs timely objected, requiring this Court to give this matter de novo review.[1] Defendants timely responded, and the Court heard oral argument. For the reasons stated below, the Court declines to adopt Judge Acosta's Findings and Recommendations and denies Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6). This case is returned to Judge Acosta, who may consider Defendants' anti-SLAPP arguments asserted against Plaintiffs' state law claims.

## STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

---

[1] Under the Federal Magistrates Act, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A motion to dismiss for lack of subject matter jurisdiction brought under Rule 12(b)(1) may be either facial or factual. *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite

their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

**B. Motion to Dismiss for Failure to State a Claim**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

GAT is a law firm based in Eugene, Oregon. Among its other clients, GAT represents creditors in debt collection lawsuits. In 2017, GAT filed three separate lawsuits in Oregon state court against Chase, MacCartney, and Mueller, the named Plaintiffs in this case. GAT filed these state court collection actions on behalf of its client Midland Funding LLC ("Midland"). In the state court actions, Midland, as the state court plaintiff, sought to collect on delinquent accounts owed by Chase, MacCarthy, and Mueller. The Plaintiffs here, who were the defendants in the state court collection actions, each received service of a state court summons and complaint. Each state court complaint alleged that the named defendant owed certain money to a creditor and that Midland purchased the defendant's relevant account or accounts from that creditor. In each state complaint, Midland sought the amount of the debt owed plus "costs and disbursements incurred herein."

Vision, a wholly owned subsidiary of GAT, served the defendants in the state collection actions (the named Plaintiffs here) by certified mail, return receipt requested, restricted delivery. The defendants in the state collection actions declined to appear in the state lawsuits, and the state court entered default judgments against them. After each entry of default, GAT filed a Statement of Costs with the relevant state court, but GAT did not serve those defendants with copies of the Statement of Costs. In each Statement of Costs, GAT requested, in addition to the filing fee, a fee of $45 for "Service Fees (expedited service)." Further, each Statement of Costs contained the following affirmative representation by GAT: "*Expedited* Service was *necessary* and the service fees set forth below [$45.00] reflect the *actual costs* of the service." (Emphasis

added.) The relevant state court allowed the requested costs, and each state court defendant (the named Plaintiffs here) ultimately paid in full the judgments against them, including the $45 fee for expedited service. Plaintiffs in this action contend that expedited service was not necessary, that $45 was not the actual cost of service, and that the fact that Vision was a wholly owned subsidiary of GAT was not disclosed.

## DISCUSSION

Defendants, GAT and Vision, argue in their motion to dismiss that they already "litigated" the service fee issue in state court when the state court judge (or, perhaps, a clerk of the court) approved the Statement of Costs. Defendants further argue that when the named Plaintiffs here, Chase, MacCarthy, and Mueller, failed to appear in state court, they waived their rights to receive notice of the Statement of Costs as well as their rights to object in state court to the requested service fees. Thus, according to GAT and Vision, this Court lacks jurisdiction under the *Rooker-Feldman* doctrine and, further, issue preclusion bars Plaintiffs' claims.

### A. The *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction to hear collateral attacks on state court judgments or de facto appeals from those judgments. The premise of the doctrine is that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Instead, the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts. *Id.*; *see* 28 U.S.C. § 1257.

*Rooker-Feldman*, named after the two cases in which the Supreme Court applied this rule to hold that a federal district court lacked jurisdiction, "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). In *Rooker*, a party who had lost in the Indiana Supreme Court, and who failed to obtain review in the United States Supreme Court, filed an action in federal district court challenging the constitutionality of the state court judgment. The Supreme Court viewed the action as tantamount to an appeal of the Indiana Supreme Court decision, over which only the Supreme Court had jurisdiction, and said that the "aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly." *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). In *Feldman*, decided 60 years later, the plaintiffs had been refused admission to the District of Columbia bar by the District of Columbia Court of Appeals and sought review of these decisions in federal district court. The U.S. Supreme Court held that to the extent plaintiffs challenged the Court of Appeals' decisions themselves—as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals—their sole avenue of review was with the Supreme Court. *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).

The Supreme Court has since noted that "[n]either *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule." *Lance v. Dennis*, 546 U.S. 459, 464 (2006). In *Exxon Mobil*, the Supreme Court warned that the lower courts have at times extended *Rooker-Feldman* "far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." 544 U.S. at 283.

A federal district court engages in a two-part inquiry to determine whether *Rooker-Feldman* deprives it of subject matter jurisdiction. First, the Court must determine whether the

action contains a forbidden de facto appeal of a state court decision. *Noel*, 341 F.3d at 1158. If the Court determines that the plaintiff is indeed bringing a de facto appeal of a state-court judgment, there is no subject matter jurisdiction over any issue that is "inextricably intertwined" with the state court judicial opinion from which the forbidden de facto appeal is brought. *Id.* at 1158. "The 'inextricably intertwined' language from *Feldman* is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). "Should the action not contain a forbidden de facto appeal, the *Rooker-Feldman* inquiry ends." *Id.*

### 1. Plaintiffs' Claims Do Not Constitute a Prohibited De Facto Appeal

A threshold question is whether a de facto appeal exists. As explained by the Ninth Circuit in *Bell v. City of Boise*, "[a] de facto appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'" *Bell*, 709 F.3d at 897 (citing *Noel*, 341 F.3d at 1164). The Ninth Circuit continued: "In contrast, if a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker–Feldman does not bar jurisdiction." Id. (internal quotation marks omitted). That court emphasized: "Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal *only* if the plaintiff also alleges a legal error by the state court." *Id*. (emphasis added); *see also Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004), *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("[A] plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief").

Plaintiffs here do not seek to set aside the judgments in their prior state court cases, nor do they allege that the state court committed any legal error. Rather, they allege that GAT's state court complaints falsely and misleadingly stated that GAT's client only sought "actual costs"

incurred and that GAT fraudulently misrepresented in its Statement of Costs both the actual cost of service and that "Expedited Service was necessary." Thus, Plaintiffs' claims arise from GAT's own actions and representations, not from any legal error committed by the state court.

Further, the facts of *Bell v. Boise* demonstrate this distinction. In *Bell*, a group of homeless individuals sued the City of Boise in federal court, alleging that ordinances criminalizing sleeping in public places violated the Eighth Amendment. 709 F.3d at 893. Among other relief, the plaintiffs in *Bell* asked the federal court to order expungement of the records of any homeless individuals unlawfully cited or arrested under the ordinances. *Id.* at 894. The district court dismissed the plaintiffs' claims for such retrospective relief under *Rooker-Feldman*. *Id.* at 895-96. The Ninth Circuit, however, reinstated those claims, explaining that "[a]lthough Plaintiffs sought relief designed to remedy injuries suffered from a state court judgment, they did not allege before the court that the state court committed legal error, nor did they seek relief from the state court judgment itself." *Id.* at 897.

Similarly, the Plaintiffs here allege that GAT—not the state court— engaged in unlawful activity. The Amended Complaint alleges that *expedited* service of the collection complaints was neither necessary nor actually performed and that GAT's claimed "actual cost" for service exceeded the real cost of such service. Plaintiffs also allege that GAT misled them when it stated in its collection complaints that its client sought only "actual costs" incurred, in addition to the underlying debt. Finally, Plaintiffs argue that GAT and Vision unjustly enriched themselves because Vision was a "dummy service company" wholly owned and operated by GAT.

The *Rooker-Feldman* doctrine is grounded in principles of federalism and comity, *see Bianchi v. Rylaarsdam*, 334 F.3d 895, 902 (9th Cir. 2003), and such concerns are even less present here than in *Bell*. The Ninth Circuit in *Bell* found that *Rooker-Feldman* did not deprive

the federal court of subject matter jurisdiction even though the plaintiffs in that case asked the federal court to order the expungement of state criminal records. Here, Plaintiffs do not ask the Court to set aside their state court judgments, which have already been fully paid and satisfied. Rather, they ask the Court to decide whether GAT committed violations of the FDCPA and the UTPA in the process of obtaining the cost awards from the state court by default judgment. If federalism and comity concerns do not deprive federal courts of the ability to order expungement of state criminal records, they do not deprive this Court of jurisdiction to consider alleged independent violations by GAT of state and federal law committed in the process of obtaining an allegedly inflated cost award in a default judgment.

2. **An "Inextricably Intertwined" Analysis is Not Required Here**

A claim is inextricably intertwined with a state court judgment if the federal claim can succeed only to the extent that the state court wrongly decided the issues before it. *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029-30 (9th Cir. 2001). A claim also is "inextricably intertwined where the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (quotation marks omitted).

The "inextricably intertwined" analysis, however, is only required when a federal court determines that the plaintiff's claim is a de facto appeal. It is not a test to determine whether a claim is a de facto appeal. *See Bell*, 709 F.3d at 897. Because Plaintiffs' claims here are not a de facto appeal of the state court judgments, the second step of *Rooker-Feldman* is not implicated.

3. **Even if Rooker-Feldman Were to Otherwise Apply, the Extrinsic Fraud Exception Would Preclude its Application in This Case**

Even when a plaintiff brings a de facto appeal of a state court judgment, *Rooker-Feldman* does not bar a federal suit if that judgment was obtained by extrinsic fraud. *Kougasian v. TMSL,*

*Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004). Fraud on a court is "not an error by that court," but instead is "a wrongful act committed by the party or parties who engaged in the fraud." *Id.* "*Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." *Id.* If the parties had raised the issue of fraud before the state court, however, and the state court made a determination that there was no fraud, then *Rooker-Feldman* would apply. *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 860 (9th Cir. 2008).

Defendants argue that Plaintiffs' allegations do not constitute extrinsic fraud because the alleged conduct did not prevent plaintiffs from presenting their claims in court. Defendants state that "[t]he only conduct that prevented plaintiffs from presenting their claims was their own failure to appear and defend." This argument is unconvincing. Accepting Plaintiffs' allegations as true, as this Court must when considering a motion to dismiss, Plaintiffs did not appear in court because they did not dispute their liability for the underlying debt that GAT sought to collect nor their responsibility for actual costs and disbursements.

Plaintiffs never knew, however, that GAT would seek a $45 service fee for *expedited* service that was not necessary and that was not, at least as alleged, even actually incurred. The state court complaints only stated that GAT's client would seek *actual* costs incurred. Plaintiffs argue that this allegedly false representation deprived them of fair notice and an opportunity to contest the expedited service fee that was neither necessary nor actually incurred. Thus, even if *Rooker-Feldman* were otherwise to apply in this case, the fraud that Plaintiffs allege constitutes extrinsic fraud sufficient to preclude the doctrine's application here.

B. Issue Preclusion

Defendants also argue that, even if *Rooker-Feldman* does not deprive the Court of subject matter jurisdiction, the Plaintiffs have failed to state a claim sufficient to withstand dismissal

under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the issue of service fees was already decided by the state court and issue preclusion bars a subsequent claim. District courts must apply the issue preclusion principles of the state in which they sit. *Readylink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 760 (9th Cir. 2014). The Oregon Supreme Court has noted that "[t]he doctrine of judicial finality, of which [issue preclusion] is a part, is based upon two considerations. First, the protection of private litigants against the harassing necessity of litigating more than once the same issue or cause of action; and second, the protection of the public's interest in preventing relitigation of matters once decided." *Bahler v. Fletcher*, 257 Or. 1, 6 (1970); *see Barackman v. Anderson*, 338 Or. 365, 368 (2005) ("Issue preclusion is a jurisprudential rule that promotes judicial efficiency.").

In Oregon, issue preclusion applies when five elements are satisfied: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceedings; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceedings; and (5) the prior proceedings was the type of proceedings to which this court will give preclusive effect. *Nelson v. Emerald People's Utility Dist.*, 318 Or. 99, 104 (1993). "Even where those elements are met, 'the court must also consider the fairness under all the circumstances of precluding a party.'" *Minihan v. Stiglich*, 258 Or.App. 839, 855 (2013) (quoting *State Farm Fire & Cas. Co. v. Century Home Components, Inc.*, 275 Or. 97, 110 (1976). The parties dispute the first, second, and third elements, but stipulate that the fourth and fifth elements have been met. As the parties claiming preclusion, GAT and Vision bear the burden of showing the first and second elements, while Plaintiffs bear the burden of proof on the third element. *Barackman v. Anderson*, 214 Or.App. 660, 667 (2007).

### 1. The Issues Here Are Not Identical to the Issues in the State Court Cases

Oregon courts have adopted "a strict standard for the 'identity of issues' requirement and require that 'the precise question was raised and determined in the former suit.'" *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1007 (9th Cir. 2007) (quoting *State v. Hunt*, 161 Or.App. 338 (1999)). The issue here is whether GAT engaged in false, misleading, or deceptive practices by sending collection complaints seeking payment of the debt each Plaintiff owed and *costs actually incurred*, then later seeking an award of costs for expedited service that was unnecessary and that did not occur. In the state court default judgments, the court considered, at most, only the facial reasonableness of GAT's asserted costs. Although these issues are related, they do not meet Oregon's "strict standard" for the identity of issues requirement.

In the default judgments, the state court approved GAT request that its client recover $45 in each case as an expedited service fee. Plaintiffs do not deny that the state court approved this fee. Instead, Plaintiffs' claims under the FDCPA and the UTPA arise from GAT's *collection practices*; *i.e.*, GAT's sending of collection complaints stating it would seek only "actual costs and disbursements" incurred while knowing that it would later seek service fees for "expedited" service that was unnecessary and that were not even the "actual" costs incurred in completing service. The state court did not decide whether GAT's representations to Plaintiffs were false, deceptive, or misleading representations that violated the FDCPA and the UTPA, or whether GAT and Vision were unjustly enriched by GAT's undisclosed use of Vision as a "dummy service company."

A district court decision from this district, *Jenkins-Brown v. Liberty Acquisitions Servicing, LLC*, provides an instructive and analogous factual scenario in which the court refused to apply issue preclusion to an FDCPA claim. 2015 WL 5561055 (D. Or. Sept. 14, 2015). Like here, the defendant in *Jenkins-Brown* obtained a default judgment against Jenkins-Brown in state

court and asked the state court to award "contractual" pre-judgment interest, which the court did. Jenkins-Brown then sued Liberty in federal court, alleging that Liberty violated the FDCPA when it sought pre-judgment interest to which it was not legally entitled under the relevant contract. Liberty argued that Jenkins-Brown's FDCPA claim was precluded by the state court judgment. The district court disagreed, stating: "By allowing a default judgment to be entered against her in the state court case, Jenkins-Brown is precluded only from relitigating" her liability for the principal debt, not any FDCPA violations Liberty may have committed in the course of collecting the debt. *Id.* at *7.

Plaintiffs here do not dispute their liability for the underlying debt in the state court proceedings or even for reasonable costs actually incurred. Rather, they claim that GAT deceptively engaged in a scheme to obtain inflated service fees. Plaintiff's theory is that GAT sent collection complaints to each Plaintiff asserting entitlement to the debt each Plaintiff owed to GAT's client and representing that GAT would also seek recovery of "actual costs" that GAT's client incurred. Plaintiffs, recognizing their liability for the underlying debt and for actual costs, allowed the state court to enter default judgments against them. Then, according to Plaintiffs, GAT stated in *ex parte* submissions to the state court (copies of which were not sent to Plaintiffs) that GAT or its client had actually incurred a $45 expedited service fee and that such expedited service was necessary, even though such a fee was not actually incurred and expedited service was not necessary, according to Plaintiffs' allegations. Under this theory, GAT violated the FDCPA and the UTPA when it misled Plaintiffs into believing that GAT's client sought only actual costs, induced Plaintiffs to accept entry of a default judgment, then fraudulently claimed inflated costs in a court filing that was not even provided to Plaintiffs. The state court never considered this theory or resolved the veracity of GAT's statements. Indeed, the scheme that

Plaintiffs allege succeeded in part because GAT prevented the Plaintiffs from considering these issues when GAT chose not to send copies of its Statement for Costs to the Plaintiffs.

### 2. The Issue Here Was Not Actually Litigated Nor Essential to a Final Decision

In Oregon, "the doctrine of res judicata, including collateral estoppel, as to matters essential to the judgment, applies to judgments by default." *Gwynn v. Wilhelm*, 226 Or. 606, 609 (1961). To satisfy the "actually litigated and essential to a final decision" requirement, "a prior court's resolution of an issue must either be apparent from the face of a judgment or order or, if not apparent from the face of a judgment or order, must have been necessary to the resolution of the prior adjudication." *Leach v. Scottsdale Indemnity Co.*, 261 Or. App. 234, 240 (citing *Westwood Constr. Co. v. Hallmark Inns*, 182 Or. App. 624).

Plaintiffs argue that in a default judgment, no issue is "actually litigated." If this were true, however, issue preclusion could never apply to default judgments. But the Oregon Supreme Court in *Gwynn* made clear that issue preclusion *does* apply in cases involving default. 226 Or. at 609. Plaintiffs note the overlap, however, between the "actually litigated" requirement and the identity of issues requirement. The issues in the state court proceedings were "actually litigated" for purpose of issue preclusion, but those issues are distinct from the issues that Plaintiffs present here for the reasons explained above. Thus, the issues of whether GAT's conduct violated the FDCPA and the UTPA and whether GAT and Vision unjustly enriched themselves were not "actually litigated and essential to a final decision on the merits" in the state court proceedings.

### 3. Plaintiffs Have Not Had a Full and Fair Opportunity to be Heard

Even if the issue here were identical to an issue actually litigated and essential to a state court judgment, Plaintiffs argue that they were denied a full and fair opportunity to be heard on the issue of the expedited service fees. Plaintiffs contend that they were never placed on notice that GAT planned to seek the $45 fee for expedited service when expedited service was not

PAGE 15 – OPINION AND ORDER

necessary and the fee was not actually incurred. The state court complaint merely stated that GAT's client sought "actual costs." Plaintiffs also state that GAT did not disclose that Vision was GAT's wholly owned subsidiary at the time of the state court proceeding and had no reason to expect that GAT and Vision were engaged in the alleged scheme to collect inflated service fees. Defendants respond that Plaintiffs could have appeared in the state court proceedings to contest GAT's claimed costs. Plaintiffs' choice to allow entry of default judgment, Defendants argue, was the only barrier to Plaintiffs' being heard on the issue. Although it is true that Plaintiffs may have had an opportunity to raise these claims in the state court proceedings had they chosen to do so, it is less clear that the opportunity was "full and fair." Plaintiffs state that they were not on notice that GAT intended to seek a $45 expedited service fee not actually incurred because the state court complaint that each Plaintiff received stated only that GAT's client would seek "actual costs" incurred. As alleged by Plaintiffs, this lack of notice suggests that Plaintiffs' opportunity to raise these claims in state court was less than "full and fair."[2]

### 4. Application of Issue Preclusion Would be Unfair

Even if all five requirements for issue preclusion were met, "the court must also consider the fairness under all the circumstances of precluding a party." *State Farm*, 275 Or. 97 at 110.

---

[2] The Court also notes the relatively small sums at issue in each Plaintiff's case. Each Plaintiff's actual damages are no greater than $45 and, possibly, less. Even if a Plaintiff had known that GAT was going to seek a $45 expedited service fee award, it might not be worth the effort to an individual Plaintiff to expend resources investigating whether this amount was actually incurred and whether expedited service was necessary, let alone to hire counsel to appear in court to contest the matter. This is particularly so in a case like this, when Plaintiffs never disputed their liability for the underlying debts that they owed to GAT's client. The small amount in dispute does not affect the Court's analysis of whether Plaintiffs had a legal opportunity to raise their claims in state court, but it does bear on whether that opportunity was "full and fair," *see Thomas v. U.S. Bank Nat. Ass'n*, 244 Or. App. 457, 473 (2011) (noting the relevance of a party's incentive to litigate in the first case), as well as the ultimate fairness of precluding Plaintiffs' claims here.

Although the Court does not believe the requirements for preclusion have been met here for the reasons already stated, the Court still would not preclude Plaintiffs' claims because a formalistic application of that doctrine could lead to injustice in this case. Plaintiffs allege that GAT violated federal and state consumer protection statutes by leading debtors to believe that GAT would seek only actual costs incurred and telling the state court that expedited service was necessary, when both were untrue. That individual debtors allowed entry of default judgments against them should not immunize Defendants from liability for misleading, deceptive, or fraudulent activity, assuming that Plaintiffs' allegations are ultimately proven.

Finally, application of issue preclusion in this case would not serve the purposes of the doctrine. Issue preclusion protects "private litigants against the harassing necessity of litigating more than once the same issue or cause of action." *Bahler*, 257 Or. at 6. It also protects "the public's interest in preventing relitigation of matters once decided." *Id.*; *see also Barackman v. Anderson*, 338 Or. 365, 368 (2005) ("Issue preclusion is a jurisprudential rule that promotes judicial efficiency.") The state court judgments were obtained by default, diminishing any prejudice to Defendants, and few judicial resources were expended in the entry of those default judgments. For all these reasons, the Court finds that application of issue preclusion under the facts presented here would be inappropriate.

## CONCLUSION

The Court declines to adopt the Findings and Recommendation (ECF 37) and denies Defendants' Motion to Dismiss (ECF 19).

**IT IS SO ORDERED**.

DATED this 10th day of October, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 17 – OPINION AND ORDER